immunity in favor of nurse Brady on Miss McKee's 14th amendment deliberate indifference claim. I'd like to jump right into the first of three errors that is your court committed in its opinion. The first one has to do with the November 20th kite message sent by Miss McKee to nurse Brady. In that message Miss McKee asked for a lower bunk due to seizures, due to malnutrition, due to her Crohn's. Now nurse Brady when she read this message immediately conducted a thorough review of Miss McKee's medical record including her provider's notes and found no history of seizures, no history of prescriptions for seizures, so she aptly denied the request. Now the district court contends a reasonable jury could find this creates an issue of fact but the record is so clear this is not is incorrect. If we look at the text of the message itself it does not state that Miss McKee ever had a seizure. It says that she was talking about her seizures and a correctional officer overheard her who instructed her then to send a message to medical. That's how this went. When nurse Brady reviewed the records they found no support in the records that's why it was denied. Now as Miss McKee testified and as nurse Brady testified, Crohn's is a disease that goes through periods of remission and goes through periods of flare-ups. It's undisputed that Miss McKee had been in remission for three years prior to her incarceration in September 2019. She had not seen her gastrointestinal doctor for six months. She was not taking any medication. This November 20th kite is the first ever mention of Crohn's and because it's related to the seizures there was no support in the record and nurse Brady aptly denied the request. The second error the district court committed has to do with the December 8th message again sent by Miss McKee to nurse Brady. In that message Miss McKee asked for a vegetarian diet because that was what she thought that she needed to treat for her Crohn's and the district court identified specifically the issue of blood loss in this message as potentially creating a fact dispute but this is also incorrect. If we read the text and I'll read into the record Miss McKee wrote blood loss is starting to make me lightheaded especially during my cycle. Now that statement alone doesn't tell nurse Brady anything other than perhaps Miss McKee's flow during her cycle may be heavier. Now the district court followed this up with a statement that nurse Brady herself testified that bleeding would require immediate medical attention but nurse Brady testified in deposition in regards to a question about rectal bleeding or blood in the but it's starting to make me feel lightheaded especially during my cycle. One reading of that is there is additional bleeding that over and above what's going on with my cycle. I agree to an extent your honor it could be perhaps like how we choose to view it where it's heavier flow but there's no support in the record for any there was ever any communication specifically telling nurse Brady that there was rectal bleeding or any blood. I guess my point is you could read if you understand what Crohn's is and you understand she has Crohn's one reading is I've got blood loss due to Crohn's which is making me lightheaded especially during my cycle when I'm also losing blood. Nurse Brady it is our perspective is that nurse Brady did not read it that way because again Miss McKee testified and nurse Brady testified that people who experience Crohn's no one experiences the same way the same way so the person who is experiencing it is the best person in best position to treat it and because Miss McKee asked specifically for a vegetarian diet nurse Brady readily granted that and that does not create an issue for a fact dispute because nurse Brady aptly responded. What did McKee request in that 12-8 message? She asked for a vegetarian diet. I can read. What did they do in response to her request for a diet? They granted the diet. But as I understand your argument on appeal is you're saying she had no no she did not subjectively know about her medical need and so regardless of the response this would give potentially at least I mean arguably some notice of a problem with the Crohn's right? So you're focusing on her response but I think your brief was focusing on what would I have known. Correct that is correct your honor. Now I do just want to focus on this blood loss because it's the statement is just blood loss started making me lightheaded especially in my cycle. Again there's no clear communication there nor is there any other evidence in the record that Miss Brady that nurse Brady ever knew there was any bleeding other than what she could have taken away and what we contend she took away is that it was a heavier flow. Not that there was blood in the stool. Miss McKee was familiar with this attention facility. She had been there multiple times. The detainee handbook details that sick call is available for inmates if they want to be seen. Now Miss McKee never said she wanted to be seen. She never asked to call in for a sick call. This blood loss in this statement does not put nurse Brady on notice that there was anything that required immediate medical attention. The third error. How did the nurse communicate the offered medical evaluation that you stress? That is the third error that I was about to move on to Judge Benson. So that's the third error. That is in reply to the December 18th message that Miss McKee sent. In that message she reiterated her request for a lower bunk but this time it was due to acetabular hip infringement syndrome impingement syndrome which is essentially hip pain. In that message nurse Brady read that message and of course replied sick call is available. After that point on December 19th it's a period of almost three weeks where Miss McKee does not follow up again with nurse Brady. There is no more communication until January 9th a little after 5 p.m. when Miss McKee returned from her court hearing and submitted a kite that said you know I'm looking for electrolytes or a nutritional boost. At that point on January 10th when nurse Brady came back into the jail for her shift she read that message and as a result of the compilation of the previous messages and in a desire to avoid giving a telephone she chose to bring Miss McKee in. Now the district court focuses on this. The district court writes that Brady did not offer an appointment until December 19th. Again going back to my earlier point she did not need to offer an appointment. Sick call was always available. Inmate or detainees could have always asked to be seen. Miss McKee had been familiar with this environment. She never asked for a sick call. She never chose to be seen. Nurse Brady did everything she could and responded aptly to each and every... That's an awfully high standard because she never even saw the detainee until January 10, right? First time she saw her in person, correct? That is correct. That is the first time she saw her in person for Crohn's symptoms. She had seen her in person at the health appraisal when she was booked in and... What dates were those the previous time? I did not understand that from the record. I thought that was the first time she'd seen her in person. Go ahead. So the health appraisal happened in mid-September. Miss McKee, if I believe correctly, was booked on September 12th. She was seen for a health appraisal less than 48 hours later and then about two weeks later in the 20s... No, we're talking specifically about, and I get them confused all the time, Nurse Brady. Nurse Brady, yes. So Nurse Brady saw Miss McKee... Let me ask it this way so I get an answer. Before January 10, when was the last time that she'd seen her in person? Late September 2019. That's what I thought. That's about four months prior. That's what I thought. And isn't that the real claim here that surely in that time a nurse would have seen her during that period of time and would send her to Mayo sooner? I am at my rebuttal time if I may answer your question. That is not the precise issue we're focusing on here. Again, it's that Nurse Brady should have been subjectively aware. There was no mention of Crohn's during her booking process during this in-person appraisal in late September all the way up until November 20th. That's the first mention of Crohn's. Would I have any time, Your Honor? Very well, you may. Thank you for your argument. Mr. French, we'll hear from you. May it please the Court, my name is William French. I represent appellee Jessica McKee. Appellate moved for summary judgment on just the qualified immunity basis. And we're here and the way I read the case is the only thing for this Court to decide are two things. One, did Ms. McKee show that she had a clearly established right to adequate medical care? And that is not contested. And then the second thing that this Court must look at, did the trial court at page 9, did the trial court blatantly contradict the record in its decision? And our position is, of course, that it did not. The use of the word blatant, I think, is very interesting. It means sort of like a complete disregard or just ignored obvious things. Ms. McKee... Why do you say that? Pardon me? Why do you say that there's a need for a blatant contradiction? Well, that's the case law that I cited, Your Honor, in Wells v. Hahnemann and in Evans v. Crook, which are cited in my brief. If the appeal is just on qualified immunity, then that's the question for this Court. Well, no, I think those cases are about situations where the defendant is arguing that the district court's factual assumptions were blatantly contradicted by the record. But there's a separate question whether the facts as assumed by the district court are insufficient to show the violation of a clearly established right. And that's just a legal question. Yes, and we believe that the facts that the court relied upon are certainly contained in the record. And to look, to address the three errors that were cited by counsel, as early as November 20th of 2019, Ms. McKee complained about problems she was having with her Crohn's disease. Nurse Brady knew that she had Crohn's disease because it was determined when she into the jail that she had Crohn's disease. And in the November 20th kite, she also indicated that she had had a seizure or seizures. Then I think an important, another, the next step was December 8th, where Ms. McKee mentioned that she had blood loss. And then to go on to the next kite, which was December 16th, McKee reported that her bleeding was getting worse. Nurse Brady, in her deposition, acknowledged that the passing of blood is a condition that requires medical attention. And as the trial court pointed out, Nurse Brady never really took any affirmative action to address this issue. As it continued to get worse, Nurse Brady didn't adjust what she was doing. And as the record shows, this culminated in Ms. McKee being taken by ambulance to two medical institutions on January 10th, one in Owatonna and then ultimately one associated with the Mayo Clinic in Rochester. So the court clearly found that Crohn's disease was a serious medical need. Nurse Brady admitted that it was. And this is the kind of situation where even a layperson would have recognized necessity for a doctor's attention. So the serious medical need prong is clearly met. Then we move on to the indifferent standard. And as the trial court pointed out, delay in the provision of medical care and treatment can establish indifference. And that's what we have here. There was a delay from November 20th all the way to January 10th, where no affirmative action was taken to address the... But there were replies to her messages. That's correct. So I don't think it's quite right to say no, nothing was done. And your time is short, so let me ask you the real question. It looks to me like this is nurse malpractice at most, and we have many cases that say medical malpractice is not enough. How do you reply to that? I think it goes beyond medical malpractice, nurse medical malpractice, Your Honor. I've handled a few of those cases myself. This is a case where there was indifference to what was being reported to her. The passing of blood is a very serious medical condition. I submitted a medical disclosure in the course of the case. It's in the appendix. On the Mayo Clinic website for Crohn's disease, it says if you are passing blood, you need immediate medical attention. So in this case, there was a condition that required immediate medical attention. Nurse Brady knew that. Any lay person would know it. And yet as a professional, as a medical person, nurse Brady ignored it. So Your Honor, I think it goes well beyond medical malpractice into an area, I mean sure it's medical malpractice, but it's beyond that. So nurse Brady cannot create appellate jurisdiction by using qualified verbiage to cloak factual disputes. And I still believe that if the court looks at the trial court decision, which was at page 9, and the facts that were elicited or were shown by the trial court, this is clearly a case of serious medical need and willful indifference to a condition that required immediate medical attention. And in reality, they almost let this woman bleed to death in the jail. She needed a blood transfusion on the way to the emergency room. That's the result of the willful indifference that was shown by nurse Brady in this case. So you're saying on December 8, the detainee says the blood loss is starting to make me cycle, so I'm hoping removal of processed meats may calm it down, and requested a vegetarian diet. And the nurse responded by giving her the vegetarian diet, and you're saying that was deliberate indifference, clearly established deliberate indifference? It's part of it, Your Honor, because Jessica McKee is not the medical person in this situation. She's making suggestions to try to make her condition better. She doesn't know all the ins and outs of Crohn's disease, probably more than the average person, but the duty to provide medical care and treatment doesn't shift to the detainee, who's to tell the nurse what she should be doing. And I have to point out, because I think it's kind of ironic, on January 10, nurse Brady, even though she knows that the situation was getting very dire, suggested to Ms. McKee that if she would consider eating hard-boiled eggs as a way to alleviate the problem. There was no direct affirmative action taken by nurse Brady really at any time. And like I said, Your Honor, Ms. McKee January 10 there was. Your statements are extreme for the record. Nurse Brady didn't really take any affirmative action. Ms. McKee was trying to come up with something that might help, because apparently she knew that nurse Brady really wasn't going to address the problem. And I think it's also interesting that even though McKee had this problem, and as the hospital record disclosed, she was going to the bathroom 12 to 24 times a day. Nurse Brady wouldn't even allow her to move to the lower bunk in her cell. There's almost like a punitive element in this case. When, you're talking about on November 20? On January 10, when she went to the hospital. No, the bunk question. Yeah, the bunk question was raised a couple times. Well, the first time there was, you're saying there was a punitive action in refusing to let her go to the lower bunk? Well, when you kind of look at it, it almost seems to me like there's a punitive element like we're just not going to, I'm not going to work with you on this. I thought the second time she asked for the lower bunk, the nurse said, directed her to the sick call for an evaluation as to whether the lower bunk was warranted. And the patient or the detainee didn't take her up on it. Your Honor, in my brief, I wrote, she may have been too sick to go down to see her. My time is up, and if there are no more questions, thank you. Okay, thank you for your argument. We'll hear a brief rebuttal. Yes, Your Honor, thank you. I'd like to just clear up the record pretty quickly here. Counsel for Avelis said that Nurse Brady knew Ms. McKee had Crohn's when booked. That is incorrect. There is no support in the record for this. There is no Crohn's information on her booking sheet. There's no Crohn's information in the appraisal done in later September. The second piece is that, again, what I mentioned during my argument, Nurse Brady did testify that passing blood would be a serious medical condition. But again, there are no facts in the record which establish Nurse Brady ever knew Ms. McKee was passing blood, was indeed passing blood. What do we do with the district court's finding when he's saying a reasonable jury could find that as of, is it December 8th, that the nurse did know about bleeding issues? Yes, so the bleeding issues were in December 8th. What we do with that is we look at the record as a whole and we see that we determine there's nothing in there that establishes blood in the stool specifically or passing blood specifically. It just says... So are you saying that that fact that the district court found viewing the evidence in light most favorable to the plaintiff said there were bleeding issues? She was informed of those in December 8th. Are you saying that is just blatantly contradicted by the record? I am, Your Honor, yes. Even in the light most favorable, there's nothing in that message that tells Nurse Brady that this is a serious medical need because it is in the same statement conjoined with the comment about her cycle. And heavier flow during her cycle is not, in Nurse Brady's perspective from that moment, is not requiring immediate medical attention. Well, did the district court say that a jury could find that the nurse was informed of the bleeding issues? No. No, the district court never made that determination. There was blood in the stool. There was a comment made that Nurse Brady herself testified. That she knew about bleeding issues. Yes, that's true. You don't dispute that. Correct. The bleeding issues... Let me finish the question. I'm so sorry. I'm so sorry, Your Honor. I didn't understand you to dispute that because the message says there's bleeding and it's aggravated during her cycle. So, right after the district court made that determination, it went on to state that, again, that Nurse Brady did testify that bleeding would be serious and would require immediate attention. But again, there's no support for blood in the stool in the record as ever being communicated to Nurse Brady. Thank you for your argument. Your time has expired. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Thank you.